UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                              CASE NO. 13-CR-20263
v.                            HONORABLE GEORGE CARAM STEEH

DOMINIQUE SMITH,

        Defendant.
_____/

**OPINION AND ORDER DENYING SMITH'S MOTION TO SEVER (Doc. 22)
AND DENYING SMITH'S MOTION TO SUPPRESS (Doc. 25)**

Defendant Dominique Smith has been charged in an indictment with robbery of a Verizon Wireless store in Taylor, Michigan, in violation of 18 U.S.C. § 1951(a) and using, carrying, and brandishing an assault rifle during that robbery in violation of 18 U.S.C. § 924(c). Now before the court is Smith's motion to be severed from trial from his three co-defendants and his motion to suppress his confession. Oral argument was heard on October 2, 2013. In support of his motion to suppress, Smith submitted a videotape of his confession which this court has viewed in its entirety and duly considered. For the reasons set forth below, Smith's motions shall be denied.

FACTUAL BACKGROUND

Defendants Antonio Porter, Dantez Boykin-Johnson, Eric Wilkens, and Dominque Smith are accused of being involved in a series of robberies in February, 2013. On February 12, 2013, defendants Porter, Boykin-Johnson and Smith are accused of robbing at gunpoint the employees of a Verizon Wireless store in Taylor, Michigan, in violation of

-1-

the Hobbs Act, 18 U.S.C. § 1951(a). These defendants allegedly entered the store wearing masks and carrying an assault rifle, ordered customers and employees to the back of the store, ordered them to the floor and proceeded to bind their ankles and cover their eyes with duct tape. They then ordered the store manager to open the safe and absconded with several cellular phones. In addition to the robbery count, those three defendants also are charged with using, carrying and brandishing an assault rifle in the commission of that offense in violation of 18 U.S.C. § 924(c).

All of the defendants, except Smith, are also charged with committing three additional robberies during the morning on February 25, 2013 of 7-11 stores in Garden City, Michigan, and Westland, Michigan, as well as a Verizon Wireless store in Canton Township, Michigan, in violation of 18 U.S.C. § 1951(a). Like the robbery committed on February 12, 2013, defendants wore masks and robbed store employees at gunpoint. All of the defendants, other than Smith, are charged with using, carrying, and brandishing an assault rifle during the robberies of the 7-11 stores and also with discharging an assault rifle during the robbery of the Canton Township Verizon Wireless store in violation of 18 U.S.C. § 924(c).

ANALYSIS

A.    <u>Smith's Motion to Sever</u>

    1.    <u>Standard of Law</u>

Federal Rule of Criminal Procedure 8 provides for the joinder of offenses or defendants as follows:

> **(a) Joinder of Offenses.** The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged--whether felonies or misdemeanors or both--are of the same or similar character, or are based on the

> same act or transaction, or are connected with or constitute parts of a common scheme or plan.
>
> **(b) Joinder of Defendants.** The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Fed. R. Crim. P. 8.  In order to satisfy the condition that the defendants participated in the "same series of acts or transactions" as set forth in Rule 8, the Sixth Circuit has held that "a group of acts or transactions constitutes a 'series' if they are logically interrelated," and that a "group of acts or transactions is logically interrelated, for instance, if the acts or transactions are part of a common scheme or plan." United States v. Johnson, 763 F.2d 773, 776 (6th Cir. 1985).  In this case, the four robberies occurred within a two-week period and involved the hold-up of two Verizon Wireless stores in which defendants brandished an assault rifle, wore masks, demanded cash and merchandise from employees, and ordered the victims to the ground and/or bound them with duct tape.  Given these circumstances, joinder of Smith with the other defendants in the first superseding indictment is proper under Rule 8.

Even if joinder of offenses and defendants is proper under Rule 8, the court must also consider whether prejudice to the defendant requires severance under Rule 14 which provides:

> **Rule 14. Relief from Prejudicial Joinder**
>
> **(a) Relief.** If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Fed. R. Crim. P. 14.

Rule 14(a) gives the trial court discretion to sever defendants even where joinder is proper. United States v. Lane, 474 U.S. 438, 449 n.12 (1986). However, there is a strong preference for joint trials of defendants who are indicted together. Zafiro v. United States, 506 U.S. 534, 537 (1993). The preference for joint trials is particularly true when the defendants "are accused of participating in a conspiracy or joint scheme." United States v. Cope, 312 F.3d 757, 780 (6th Cir. 2002). "There is a strong policy in favor of joint trials when charges will be proved by the same series of acts. . . and there is a presumption that the jury will be able to sort out the evidence applicable to each defendant and render its verdict accordingly." United States v. Horton, 847 F.2d 313, 317 (6th Cir. 1988) (citations omitted). Only if a joint trial would result in "substantial prejudice" to a "specific trial right" or "prevent the jury from making a reliable judgment about guilt or innocence" should severance be granted. Zafiro, 506 U.S. at 539. The Sixth Circuit has held that in order to grant a defendant's motion for severance, a defendant must show that "compelling, specific, and actual prejudice" would result from a joint trial. United States v. Gardiner, 463 F.3d 445, 473 (6th Cir. 2006).

2.   Analysis

Smith's argument that he is entitled to a separate trial because he is charged with only one of the four robberies and the additional charges against his co-defendants will prejudice him is not persuasive. The jurors are presumed to be able to sort out the evidence as to each defendant and count, and Smith's generalized complaint is insufficient to override the strong preference that defendants charged together in the indictment should be tried together.

Next, the court considers Smith's argument that severance is necessary because if the statements of the other defendants are admitted at trial, even if they are redacted to omit his name, the jury will be able to figure out that he is the one whose name is blacked out, which he alleges will violate his right to confront witnesses in violation of Bruton v. United States, 391 U.S. 123, 137 (1968). The government responds that Smith's Bruton Sixth Amendment right to confront witnesses is not implicated here, as if the government introduces the statements of co-defendants, it will redact any reference to Smith by name. See Richardson v. Marsh, 481 U.S. 200, 208-11 (1987) (severance not required under Bruton where a non-testifying co-defendant's confession has been redacted so that it does not implicate the defendant on its face even where confession becomes incriminating when linked to other evidence at trial); United States v. Sherlin, 67 F.3d 1208, 1216 (6th Cir. 1995) (where defendant's name redacted from co-defendant's confession, and was not facially incriminating, no severance required under Bruton). The Sixth Circuit has held that there is no Bruton violation where the defendant's name is redacted and a neutral term is substituted and the district court gives a limiting instruction to the jury that the confession should only be considered against the confessing defendant. United States v. Mendez, 303 Fed. App'x 323, 326-27 (6th Cir. 2008).

The court is satisfied that redaction of any reference to Smith from co-conspirators' statements will satisfy Smith's Bruton concerns. Prior to trial, the parties are encouraged to agree on how the co-defendants' statements will be redacted so as to avoid any Bruton issues.

B.        <u>Smith's motion to suppress</u>

       1.        <u>The Videotaped Confession</u>

On February 27, 2013, defendant Smith was interviewed at the Taylor Police Department. Prior to his interview, detective Schwein provided him with <u>Miranda</u> warnings. The government claims that Smith waived his <u>Miranda</u> rights. Smith alleges that he invoked his Fifth Amendment right against self-incrimination numerous times during the interrogation, or in the alternative, that any waiver of his <u>Miranda</u> rights was not voluntary. During the interview, Smith admitted to his role in several robberies, including the February 12, 2013 armed robbery of a Verizon Wireless store located in Taylor, Michigan. (Exhibit A, Interrogation Video, 00:15:01 - 00:16:02).[1] According to Smith, the questioning lasted nearly five hours, during which time he was subjected to sleep deprivation and a cold temperature while he was barefoot and wearing a short-sleeved shirt. Smith claims that he told the officer on as many as eight times that he was done talking and that on two occasions he asked to speak with an attorney but his requests were ignored.

A careful review of the videotaped interrogation reveals that early on in the questioning, after Smith was advised of his rights, he said numerous times, "I'm done," or "I'm done talking." (21:11:24-34; 21:11:43-44; 21:18:58-59; 21:21:24-28). In each of the approximately eight times that Smith said he was done, however, he continued talking and questioning continued. At certain points, Officer Schwein was the one stating that he was "done" talking. (21:23:58). Early in the interrogation Smith said, "I'm going to call for a lawyer or an attorney." (21:23:31-32). A few minutes later, Officer Schwein said, "you

---

[1] All references to times hereinafter are references to Exhibit A, the Interrogation Video.

talked about an attorney. Is that what you want to do, or do you want to talk to me?" (21:31:30-35). Smith responded, "I don't want no attorney, I want to get home." (21:31:40). About thirty minutes later, Smith said more forcefully, "I'm done talking . . . that's that." (22:03:46–22:04:04). At that point, Officer Schwein terminated questioning and led Smith to a holding cell. While leaving the room, Smith complained that he needed boots, and Officer Schwein provided him with shoes. (22:04:18). Approximately ten minutes later, the two returned to the interrogation room, and prior to resuming questioning, Officer Schwein showed Smith a copy of the Miranda rights form that Smith had signed and reminded him that his rights were still in effect. (22:16:25). Officer Schwein stated, "while we were downstairs . . . you asked me to bring you back up here to talk to me. Fair statement?" to which Smith responded, "Yeah." (22:16:40).

A short while later, Smith stated that he needed to "call my girl so I can tell her to get me a lawyer ready." (22:39:35). At that point, Officer Schwein asked him, "Do you want to end this?" (22:39:45), to which Smith responded, "I just want to call my girl." (22:40:02). A few moments later, Officer Schwein left the room and Officer Cox entered the room and began interrogating Smith. (22:40:15). Questioning ceased about fifteen minutes later when Smith stated that he would wait for his court date. (22:54:01). Again the officers stopped questioning him and led Smith out of the interrogation room. (22:54:19). Several minutes later, Smith and Officer Schwein returned to the interrogation room and questioning resumed. (23:00:09). Upon return, Smith appears eager to answer questions. Officer Cox brought Smith a drink and a slice of pizza. (23:02:08). Smith admitted to driving the get-away vehicle in one of the robberies. (23:03:26-23:07:38). Later, Smith said he was dizzy and jittery and he stood up and stated that he wanted to call his girl.

(23:29:33-45). Again, the officers stopped questioning him and led him out of the interrogation room. (23:30:20). As he reentered the interrogation room about ten minutes later, the video shows Smith waving Officers Schwein and Cox back into the room, and in response to Officer Cox's statement, "Do you want to talk to me?" Smith responded, "yeah." (23:40:30). After this point, Smith made many damaging admissions. (23:43:00-00:18:50). Smith admitted to his involvement in the attempted robbery of a T-Mobile store and a Verizon store, and the robbery of an AT&T store. (23:43:31-23:44:57). Finally, Smith admitted to his involvement in the robbery of a Verizon store where he entered a side door, ordered an employee to open the safe, loaded a duffel bag with cell phones, and carried the bag out of the store. (00:15:01-00:16:53). These admissions were made to Officer Cox while Officer Schwein was out of the room.

Smith claims that Officer Schwein's questioning tactics were coercive because he pounded on the table, cursed at Smith demanding that he "own" that he was culpable and inevitably going to jail, and told Smith that "[t]his is MY house!" and that he, not Smith, was entitled to direct the conversation. (21:22:43-21:23:30). These tactics occurred hours before Smith reinitiated the interview by waving the officers back into the interrogation room, indicated that he wanted to talk, and confessed.

      2.      <u>Fifth Amendment Right to Remain Silent</u>

The Fifth Amendment of the United States Constitution protects an accused person from compulsory self-incrimination. U.S. Const. Am. V. In <u>Miranda v. Arizona</u>, the Supreme Court held that "the prosecution may not use statements . . . stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. 436, 444

(1966). The Miranda Court explained that one of the procedural safeguards was the following:

> [I]f the individual is alone [i.e. without an attorney] and indicates in any manner that he does not wish to be interrogated, the police may not question him. The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned.

Id. at 445. The Miranda Court made it clear that if a defendant invokes the right to remain silent at any time, prior to or during the interrogation, questioning must cease. Id. at 518. The Supreme Court has held that "no ritualistic formula or talismanic phrase is essential in order to invoke the privilege against self-incrimination." Emspak v. United States, 349 U.S. 190, 194 (1955). In Michigan v. Mosley, the Supreme Court explained that an individual's assertion of his right to remain silent must be "scrupulously honored." 423 U.S. 96, 103 (1975) (quoting Miranda, 384 U.S. at 479). The Supreme Court has held that a defendant's invocation of his right to remain silent must be clear and unambiguous. Berghuis v. Thompkins, 560 U.S. 370, 130 S. Ct. 2250, 2260 (2010); see also United States v. Hurst, 228 F.3d 751, 759-60 (6th Cir. 2000).

Smith did not clearly and unambiguously invoke his right to remain silent. Although early in the interrogation, Smith said several times, "I'm done talking," "that's it," "that's all I'm saying," "I'm done," (21:11:24-34; 21:11:43-44; 21:18:58-59; 21:21:24-28), at each point that Smith said, "I'm done," he continued talking. In fact, Officer Schwein also said that "we're done." (21:23:56). When Smith said more forcefully, "I'm done talking" (22:03:52) and that he wanted to "call his girl," Officer Schwein stopped questioning him and led him out of the interrogation room. When the questioning resumed later, Smith was reminded

of his Miranda rights and indicated that he had asked to return to the interrogation room and that he wanted to keep talking. It was not until questioning was resumed and Smith indicated his intention to waive his Miranda rights and keep talking that Smith made the incriminating statements. Thus, even if Smith's statements early in the custodial interview that he was "done" could be considered to be unequivocal invocations of his right to remain silent, his damaging admissions were not made until much later in the interview after Smith had clearly waived those rights.

The law is well settled that once a defendant invokes the right to stop talking, all questioning must cease unless the defendant initiates further communication, exchanges, or conversations with the police. Oregon v. Bradshaw, 462 U.S. 1039, 1044 (1983); Fautenberry v. Mitchell, 515 F.3d 614, 630 (6th Cir. 2008). In this case, the court finds that it was Smith who reinitiated questioning each time the police interview resumed. In each instance where he returned to the interrogation room, the video depicts him as eager to tell his side of the story, and it is clear that the questioning resumed at his request. Moreover, during the final minutes of the interrogation where Smith makes the most damaging admissions, he not only waves Officer Cox back into the room with him but responds, "Yeah" when Officer Cox asks him if he wants to talk to him. Because Smith returned for questioning on his own initiative, he waived his Miranda right to remain silent.

    3.    Fifth Amendment Right to Counsel

In Miranda, the Supreme Court held that an accused's Fifth Amendment rights include the right to counsel during custodial interrogation. 384 U.S. at 467. The Court held that if an individual indicates "in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning." Id. In Edwards

v. Arizona, 451 U.S. 477 (1981), the Court explained that once an accused requests counsel during custodial interrogation, the police must cease all questioning and may not interrogate the person until an attorney is present. Id. at 481, 484-85. The Court held that "when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." Id. at 484. The defendant is not subject to further interrogation "unless the accused himself initiates further communication, exchanges, or conversations with the police." Id. at 485. Once a defendant requests counsel, the burden is on the prosecution to show that subsequent events indicate that defendant is waiving his Fifth Amendment right to have counsel present. Bradshaw, 462 U.S. at 1044.

The Supreme Court has held that a defendant's request for counsel must be "unambiguous." Davis v. United States, 512 U.S. 452, 461(1994). In Davis, the Court held that to determine whether an accused has actually invoked his right to counsel, the inquiry is an objective one. Id. at 459. Put another way, the defendant "must articulate his desire to have counsel present sufficiently clearly that a reasonable officer in the circumstances would understand the statement to be a request for an attorney." Id. The Court concluded that defendant's statement, "Maybe I should talk to a lawyer" was not an unambiguous request for counsel. Id. at 462. Similarly, in Ledbetter v. Edwards, 35 F.3d 1062, 1070 (6th Cir. 1994), the Sixth Circuit found that the statement, "[i]t would be nice" to have an attorney was too ambiguous to invoke defendant's right to counsel.

Under this reasoning, Smith's first request for counsel wherein he stated, "I'm going to call for a lawyer or an attorney" (21:23:31-32) was ambiguous where just a few moments

later, Smith said, "I don't want no attorney, I want to get home." (21:31:35-40). Later in the interview, Smith stated that he wanted to "call my girl so I can tell her to get me a lawyer ready." (22:39:35). This statement was also ambiguous as when Officer Schwein asked him for clarification as to whether he wanted to end the interrogation, Smith responded "I just want to call my girl." (22:39:58). Smith's statement that he wanted to call his "girl" to get a "lawyer ready" was not an unequivocal request for counsel during the police interrogation, but may just as easily have been a request that he have an attorney "ready" at some future point in time. Under the objective standard, the police officers may not have understood that Smith was requesting counsel during custodial interrogation.

In United States v. Suarez, 263 F.3d 468 (6th Cir. 2001), the Sixth Circuit ruled that a defendant's request for counsel must be for "the particular sort of lawyerly assistance that is the subject of Miranda." Id. at 482 (quoting McNeill v. Wisconsin, 501 U.S. 171, 179 (1991)). In other words, the request must indicate the suspect's "desire to deal with the police only through counsel." Id. (quoting Edwards, 451 U.S. at 484). In Suarez, the police union president arranged to have a police union lawyer meet Suarez at FBI headquarters to assist him in an interrogation, but Suarez confessed to FBI agents in an FBI cruiser on his way to headquarters. Id. The Sixth Circuit ruled that the confession was not taken in violation of his Fifth Amendment right to counsel because "[t]he mere fact that the government is aware that a suspect has an attorney, or is soon to have one, does not unambiguously assert the suspect's right to deal exclusively with the police through counsel during custodial interrogation." Id. at 483. Similarly, in United States v. Doherty, 126 F.3d 769, 775 (6th Cir. 1997), cert. denied, 524 U.S. 917 (1998), partially abrogated on other grounds, 532 U.S. 162, 168, n.1 (2001), the Sixth Circuit ruled that although defendant told

the FBI his mother was going to retain an attorney for him in the case pending in the tribal court, defendant did not invoke his Fifth Amendment right to counsel where he never requested an attorney at any time during the FBI interview. As in Doherty and Suarez, Smith's comment that he wanted to call his girl to have her get an attorney "ready" for him was not an unequivocal request for counsel *during* the police *interrogation* as is required to invoke the right under Miranda.

Even if Smith did invoke his Fifth Amendment right to counsel, he later waived that right. Smith did not make his most damaging admissions until after a break in questioning whereupon the interview resumed at his request. From the video, it is obvious that Smith now wants to talk as he is seen physically waving the officers back into the room with his hands and states that he wants to answer their questions. (23:40:30). Smith himself reinitiated the police interview after asking for counsel; thus, under the holding of the Supreme Court in Oregon v. Bradshaw, there is no Edwards violation in this case.[2]

4. Smith's Statements were not Involuntary

The court now addresses the question of whether Smith's statements were involuntary. Withrow v. Williams, 507 U.S. 680, 693 (1993). The factors for the court to consider in determining whether or not Smith's confession was voluntary include, "the crucial element of police coercion; the length of the interrogation; its location; its continuity"

---

[2]Smith's reliance on United States v. Scott, 693 F.3d 715, 721 (6th Cir. 2012) where the Sixth Circuit reversed the district court's ruling that defendant did not invoke his right to counsel and remanded for further factual development to determine if it was the defendant or the police that reinitiated questioning is unavailing as the video evidence in this case stands uncontroverted and shows Smith reinitiating the questioning by physically waving the officers back into the room.

as well as "the defendant's maturity; education; physical condition; and mental health." Id. In deciding whether Smith's waiver was voluntary, the government must prove waiver by a preponderance of the evidence. Colorado v. Connelly, 479 U.S. 157, 168 (1986). Without police coercion, a confession should not be deemed involuntary. Id. at 167. The Sixth Circuit has set forth a three-part test for determining whether a confession is voluntary: (1) the confession must be extorted by police coercion, (2) the coercion must be sufficient to overbear the defendant's will, and (3) the alleged police misconduct must be the crucial motivating factor in the defendant's decision to offer the statement. United States v. Mahan, 190 F.3d 416, 422 (6th Cir. 1999).

In this case, Smith argues that his confession was involuntary because officers screamed at him and questioned him for five hours. Smith further contends his confession was involuntary because he was cold and tired, was 19 years old, and only had an eleventh grade education. The government responds that Smith was not deprived of any physical necessities, was offered food and was served pizza even when he declined it, and when he complained that he wanted to wear boots, Detective Schwein stopped the interview and provided Smith with shoes. The government contends that Smith's complaints of police coercion fall well short of the types of cases where police coercion has been found to exist. In Ledbetter v. Edwards, 35 F.3d 1062 (6th Cir. 1994), the Sixth Circuit recognized the following situations, as noted in Colorado v. Connelly to be coercive: (1) to subject defendant to four hours of questioning while he is sedated in intensive care unit, (2) to interrogate a medicated defendant for over eighteen consecutive hours without allowing him food or sleep, (3) to hold a gun to a suspect's head to extract a confession, (4) to subject a suspect to sixteen consecutive days of incommunicado interrogation, in a closed

cell without windows, while limiting the suspect's access to food; (5) to hold a suspect incommunicado for three days with little food, and then extract his confession by warning him that the chief of police is preparing to admit a lynch mob into the jail to fetch him; and (6) to question a suspect by alternating officers for thirty-six consecutive hours, without allowing him to sleep. Ledbetter, 35 F.3d at 1067, n.5 (citing Connelly, 479 U.S. 157, 163, n.1).

In this case, the police repeatedly told Smith that his co-conspirators were trying to peg him as the ringleader or the mastermind behind the whole operation. Even this conduct does not amount to police coercion as the Sixth Circuit has held that "[a] defendant's will is not overborne simply because he is led to believe that the government's knowledge of his guilt is greater than it actually is." Ledbetter, 35 F.3d at 1070. The officers also told Smith that they were trying to help him to help himself and to get back to his pregnant girlfriend, that it was only a property crime at stake as nobody got hurt, and that they understood he was financially burdened as he only worked in a fast food restaurant and had a child on the way.

The facts of this case are not analogous to those situations where the Supreme Court has found police coercion to be present. While Smith complains that Officer Schwein screamed at him, this only occurred for a short while during the beginning of the interrogation and not after Smith reinitiated questioning and confessed. In addition, Smith does not appear at all intimidated by the screaming as he yells right back at Officer Schwein. Although the duration of the questioning lasted for five hours, this duration does not compare to the days of questioning noted to be constitutionally infirm in Ledbetter.

Smith's claim that he was cold and barefoot does not amount to coercion where the officers provided Smith with shoes when he complained he wanted his boots, and offered and served him food during the interrogation. This court recognizes that police coercion need not be only physical and can be psychological, Arizona v. Fulminante, 499 U.S. 279, 285-89 (1991); however, the Sixth Circuit has cautioned that "not all psychological tactics are unconstitutional." Ledbetter, 35 F.3d at 1067. The Sixth Circuit has stated that "there is nothing inherently wrong with efforts to create a favorable climate for a confession," and "'neither 'mere emotionalism and confusion' nor mere 'trickery' will alone necessarily invalidate a confession." Id. at 1069 (quotations and citations omitted); see McCall v. Dutton, 863 F.2d 454, 460 (6th Cir. 1988).

In addition to a lack of evidence of police coercion, Smith also cannot show that his will was overborne. Despite Smith's claims that he was young and poorly educated, he was an adult, had completed eleventh grade, was living independently and holding down a job, and caring for his younger brother. Moreover, Smith had experience in the criminal justice system based on his contacts with police for domestic violence, unlawful use of a motor vehicle, and retail fraud. Throughout the interview, Mr. Smith went toe-to-toe with his questioners, shouting as much at officers as they were shouting at him. Smith has not shown that his circumstances made him susceptible to having his will overborne, or that his will was, in fact, overborne by police coercion. Accordingly, Smith cannot show that his waiver of his rights was involuntary and his confession should not be excluded on this basis.

CONCLUSION

For the reasons set forth above, Smith's motion to sever (Doc. 22) and motion to suppress (Doc. 25) hereby are DENIED.

**IT IS SO ORDERED**.

Dated:  October 23, 2013

                                        s/George Caram Steeh
                                        GEORGE CARAM STEEH
                                        UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
October 23, 2013, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk